THE STATE OF NEBRASKA, EX REL. J. C. MANN, V.
JOSEPH T. ANDERSON ET AL.

[FILED MAY 16, 1889.]

Counties: SALE OF PUBLIC GROUNDS: VOTE REQUIRED. The
language of section 30 of part 1, chapter 18, of the Compiled
Statutes, *held*, to require a number of votes equal to two-thirds
of all the votes cast upon any one question, or for all of the
candidates for any one office voted for, or to be filled, at the
election at which is submitted a question of selling the public
grounds or buildings of a county, to be cast in favor of such
proposition, in order to the adoption of such proposition.

ORIGINAL application for mandamus.

*I. L. Albert,* for relator.

*J. A. Price,* for respondent.

COBB, J.

This is an application by J. C. Mann, relator, for a per-
emptory writ of mandamus to the respondents, who are
county commissioners of Boone county, requiring them to
forthwith accept the offer and tender of the relator to pur-
chase and pay for a certain lot of ground, the property of
the county, which, it is alleged, was offered for sale at pub-
lic auction to the highest bidder by the respondents and
bid off by the relator, who was the highest bidder therefor.

The relator alleges that on November 6, 1888, the duly
qualified and acting board of commissioners of said county,
at a general election holden in and for said county, sub-
mitted to the qualified electors of the county in the form
and manner prescribed by law the following proposition:
"Shall the board of county commissioners of Boone
county, Nebraska, be authorized to sell the county grounds

belonging to said county, being lots one and two in the village of Albion, in said county of Boone, known as the court-house square, and purchase others in lieu thereof?" that said proposition was duly submitted to the qualified electors, the election was duly held, and the votes cast thereat on the proposition were duly returned and canvassed; that there were cast in favor of the proposition 857 votes, and 332 against it, and that said county commissioners, upon the due return and canvass of the votes cast, by resolution by them duly adopted, declared the proposition to be carried; that on January 11, 1889, said board of commissioners by resolution duly adopted, subdivided said lots one and two into six lots, and of the said six was one described as follows, to wit: "Beginning at a point twenty-two feet south of the northeast corner of lot one in block twelve, and running thence west 132 feet, thence south twenty-two feet, thence east 132 feet, thence north twenty-two feet to the place of beginning;" that on said 11th day of January, 1889, said board of commissioners, by resolution duly adopted, fixed the time, place, and terms of sale of each and all of said six lots, as follows, to wit: to be sold separately at public auction to the highest bidder, at one o'clock P. M., March 4, 1889, at Albion, Boone county, on the following terms, viz., the purchase price for each to be paid in three equal payments, the first cash on the day of sale, the second in one year, and the third in two years, from the day of sale, both to be secured by mortgage upon the lot sold, and to bear interest at seven per cent per annum from date of sale; that the lowest price at which each of the six lots would be sold was fixed for the first, $2,000; for the second, $1,000; for the third, $1,000; for the fourth, $1,000; for the fifth, $1,000, and for the sixth, $1,500; that in pursuance of said resolution, said commissioners, on March 4, 1889, at 1 P. M., offered said lots for sale at public auction to the highest bidder upon the terms set out, due notice having been given as required by law, at which

sale the relator was the highest bidder for the second lot described, which was struck off to him at the price of $1,000 ; that the relator immediately on the day of sale tendered to said board of commissioners one-third of the purchase money for said lot, and also a mortgage on the same to secure the full purchase price, in conformity to the terms of sale, and was ready and willing to comply with the conditions and terms of sale in every respect, and demanded of the board of county commissioners a deed of conveyance of said·lot so purchased by him, which said commissioners neglected and refused to accept either the offer and tender, or to make the deed, for the lot sold by them as aforesaid, and still neglect and refuse to convey said lot to the relator; wherefore he asks that a peremptory writ of mandamus be issued commanding the respondents forthwith to accept the said offer and tender and to convey to the relator the said lot sold to him as aforesaid.

The application was presented and heard on the following stipulation of the parties :

"It is agreed that the above-entitled cause shall be submitted upon the following statement of facts:

" I. That the statements of the petition are true."

" III. That said proposition was submitted to the qualified voters of said county at a general election on November 6, 1888, at which there were cast for presidential electors 1,844 votes.

" IV. That said proposition to sell the county grounds received 1,189 votes, of which 857 were in favor of and 332 were against the proposition.

" V. That said proposition received two-thirds of all the votes cast on the proposition.

" VI. That said proposition did not receive two-thirds of all the votes cast at said general election.

" VII. That the votes cast on said proposition were upon the same ballots and deposited in the same ballot-box as the ballots for officers voted for at said general election;

that the same judges and clerks presided, and the same poll list and tally sheet were used, and the returns on said proposition canvassed by the same board that canvassed the returns of said general election.

"VIII. That the only question at issue is whether said proposition should, in order to carry, have received two-thirds of all the votes cast at said general election, or two-thirds of all the votes cast on said proposition.

"I. L. ALBERT, *Attorney for Relator.*

"J. A. PRICE, *Attorney for Respondents.*"

This application turns upon the construction to be placed upon the statute providing in what cases and upon what terms and conditions the county boards "may sell the public grounds or buildings of the county and purchase others in lieu thereof." Section 23, article 1, chapter 18, Compiled Statutes, gives the county board such general authority. Section 24 provides that "The county board shall not sell the public grounds as provided in the third subdivision in the preceding section without having first submitted the question of selling such public grounds to a vote of the electors of the county." Sections 27, 28, and 29, provide the mode of submitting questions, including that of selling the public grounds, to the electors of the county, and of canvassing and returning the votes thereon. Section 30 provides that "If it appears that two-thirds of the votes cast are in favor of the proposition, and the requirements of the law have been fully complied with, the same shall be entered at large by the county board upon the book containing the record of their proceedings, and they shall then have power to levy and collect the special tax in the same manner that the other county taxes are collected. Propositions thus acted upon cannot be rescinded by the county board."

The question submitted depends upon the construction of the language of this section. Do the words, "two-thirds of the votes cast," mean two-thirds of the votes cast at the

polls of the general election at which the question was submitted to the electors, or do.they mean two-thirds of the votes which shall be cast upon the question itself, the sale of the public grounds, submitted at the election? If the latter, then the' relator is entitled to the writ; but if the former, then the proposition has failed, and the writ must be denied.

Section 1, article 15, of the Constitution of this State, provides for the submission of amendments to the Constitution to the electors for approval or rejection, and provides that "if a majority of the electors voting at such election adopt such amendments, the same shall become a part of this Constitution." These words have been considered and construed by this court in the case of *State v. Babcock*, 17 Neb. 188, in which the question of a proposed amendment to the Constitution had been submitted at a general election at which senators and representatives were elected to the legislature, and at which 132,000 votes were cast. The proposed amendment to the Constitution received but 51,959 votes in its favor, and 17,766 were cast against it. The holding of the court was that the number of the votes for the amendment being less than a majority of the votes for senators and representatives, the proposed amendment failed of adoption.

It is hardly worth while to remark that the writer did not at the time concur in that opinion; but it followed in principle an earlier decision of the court, and probably is supported by the weight of authority, and may be regarded as expressing the settled doctrine in this state. Comparing the language of the section of the Constitution thus construed, and that of the section of the statute here considered, I am unable to distinguish any difference between the two. The writ is therefore denied.

WRIT DENIED.

THE other Judges concur.